Donald R. Alvarez – 006160
William C. Knoche – 010030
**ALVAREZ & GILBERT**
2727 N. Third Street, #300
Phoenix, AZ 85004
Tel: 602-263-0203
Fax: 602-265-9480

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| MICHELLE P. TRAVELER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>GLENN JONES FORD LINCOLN MERCURY 1987, INC., an Arizona corporation,<br><br>Defendant. | Case No. CV05-0817 PHX SRB<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

Defendant GLENN JONES moves for summary judgment dismissing Plaintiff's Complaint, upon the grounds that there exist no genuine issues of material fact and GLENN JONES is entitled to Judgment as a matter of law, because: 1) GLENN JONES accessed Plaintiff's credit report for a permissible purpose; 2) GLENN JONES did not make a false promise or misrepresentation to Plaintiff; and 3) Plaintiff has not suffered any damages because of anything GLENN JONES said or did.

The following Memorandum and accompanying Statement of Facts with attached Exhibits and Affidavits support this Motion.

Respectfully submitted: August 23, 2005.

ALVAREZ & GILBERT

By:   Donald R. Alvarez
      William C. Knoche
      Attorneys for GLENN JONES

**Memorandum**

## OVERVIEW

Some time before 12/11/04, Plaintiff received a Capital One Auto Finance Pre-Approved Auto Financing Event voucher returnable at GLENN JONES' dealership. As a result, on 12/11/04, Plaintiff visited the GLENN JONES' dealership. SOF, ¶¶ 2-4.[1] Plaintiff met with GLENN JONES' salesman, Mike Mitchell, who had accessed Capital One's website to verify the specific terms of the Pre-Approval. During the meeting, Plaintiff asked whether her credit had to be accessed. Mitchell told her that GLENN JONES would not have to do so, as long as Capital One financed the vehicle purchased under the specific terms of the Pre-Approval. Mitchell also told Plaintiff that Capital One would access Plaintiff's credit report. SOF, ¶¶ 4-5.

After obtaining the specific conditions from Capital One, Mitchell then showed Plaintiff vehicles on the GLENN JONES' lot, including a Cadillac DTS. However, Plaintiff found nothing that she could afford using the Capital One Pre-Approval. As Plaintiff left the dealership, Mitchell said he would continue looking for a vehicle which fit within her price range. A few days later, Mitchell called and Plaintiff said she was still interested in a vehicle, and they again discussed Plaintiff's general parameters. SOF, ¶ 8. On approximately 12/20/04, Mitchell found a Cadillac Catera in Plaintiff's price range, obtained additional information, and called Plaintiff about it. Plaintiff felt that the vehicle was too small for her children and asked whether the Cadillac DTS was still available. Mitchell confirmed that it was but reminded her the price still exceeded the $20,000 Capital One limit. Mitchell then suggested that either Plaintiff make a down payment (which she said she could not afford to do) or alternate financing might be obtained. Plaintiff asked if GLENN JONES could obtain financing through a different lender.

---

[1] SOF refers to GLENN JONES' Separate Statement of Pertinent Facts in Support of its Motion for Summary Judgment.

Mitchell said he would try to do so, but that her credit report would have to be pulled to submit to other lenders, to which Plaintiff agreed. SOF, ¶¶ 9-13.

Plaintiff then provided Mitchell with additional information including her full name, previous addresses, date of birth, social security number, employer, and wages, so that her credit report could be pulled and submitted to other lenders. SOF, ¶¶ 14-15. On 12/21/04, Plaintiff's credit report was pulled and submitted to multiple lenders to determine if Plaintiff could qualify for a loan. SOF, ¶ 16. However, when the status was checked two days later, Plaintiff had been rejected by five of these other lenders. SOF, ¶ 17. When Mitchell called Plaintiff about the rejections on the Cadillac DTS, he told her that the Capital One Pre-Approval possibly could be used if Plaintiff could come up with a down payment. However, Plaintiff said she was unable to do so. Mitchell then told her he would continue trying to find a lender and would let her know if he did. SOF, ¶ 18. Despite some additional efforts during the next week, GLENN JONES was unable to obtain financing for Plaintiff on the DTS. SOF, ¶ 19.

At her deposition, Plaintiff was questioned in detail concerning all of her conversations and communications with GLENN JONES' personnel prior to her credit report being accessed. At no time did Plaintiff say she prohibited GLENN JONES from accessing her credit. She testified that the only time the issue of her credit report came up was during the initial conversation with GLENN JONES' representative on 12/11/04, the date she visited the dealership. During that conversation, she asked only whether her credit report would be run and that the GLENN JONES' representative said Capital One would do so with respect to using the Pre-Approval voucher. During all other conversations prior to her credit report being run, that issue never came up. SOF, ¶ 20.

On 01/25/05, Plaintiff sent a letter to GLENN JONES accusing it of unlawfully accessing her credit and of causing a negative impact on her credit score. On 01/26/05, Plaintiff spoke with

GLENN JONES' General Manager, Mike Underwood, about her letter. During that conversation, Plaintiff demanded that GLENN JONES pay her $2,500 under federal law. SOF, ¶¶ 21-22. The matter was then turned over to GLENN JONES' attorney, who wrote Plaintiff on 01/31/05. Instead of responding to the letter, Plaintiff filed this suit. SOF, ¶¶ 23-25.

Prior to dealing with GLENN JONES, Plaintiff's credit worthiness was dismal to say the least. Her credit report showed a score of only 489 and that she had numerous account delinquencies and outstanding debts. She also had a number of accounts that had been placed in collection. Her monthly debt obligations far exceeded her monthly income. SOF, ¶¶ 26-29. The sole basis for Plaintiff's claims is that GLENN JONES accessed her credit report without her permission and without a permissible purpose. SOF, ¶ 32. However, she does agree that a permissible purpose for obtaining a credit report would be in an attempt to obtain financing to purchase a motor vehicle. SOF, ¶ 33. Plaintiff also testified that she had no reason to believe that GLENN JONES accessed her credit report for any other reason than to obtain financing to assist her in the purchase of a motor vehicle. SOF, ¶ 34. Despite her obligation to supply such information, and despite thorough questioning at her deposition regarding the same, Plaintiff has not provided any evidence regarding any damages she may have suffered as a result of anything GLENN JONES did. She merely speculates that she lost the opportunity to obtain a $40,000 home equity loan because of GLENN JONES running her credit, although she has produced not one scintilla of evidence to substantiate such, despite requests that she do so. SOF, ¶¶ 37-47.

## ARGUMENT[2]

There are two reasons the Court should grant this motion. First, Plaintiff cannot prove liability under any of her claims. Second, she has not suffered damages as a result of GLENN JONES' statements or conduct. The following addresses liability first.

---

[2] Copies of the FCRA and cases cited are provided to the Court for convenience.

4

# I

# LIABILITY ANALYSIS

**1.     The FCRA Claim.**

The Fair Credit Reporting Act (FCRA) is not a strict liability statute.  A plaintiff must demonstrate a willful or knowing failure to comply with the FCRA's requirements.  *Thibodeaux v. Rupers*, 196 F.Supp.2d 585, 590 (S.D.Ohio 2001)

Plaintiff alleges that GLENN JONES did not have a permissible purpose when it accessed her credit report and thus violated §§ 1681b(f) and 1681q of the Fair Credit Reporting act.[3]

First, § 1681b(f) generally provides that a person shall not obtain a credit report unless the person obtains the report for a purpose for which the report is authorized to be furnished.  Section 1681b(a) states the permissible purposes for which a person may request a credit report.  *Uhlig v. Berge Ford, Inc.*, 257 F.Supp.2d 1228, 1231 (D.Ariz. 2003).  Section 1681b(a)(3)(A) states that a person who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished" may access a report.  Section 1681b(a)(3)(F)(i) states that a person who "has a legitimate business need for the information in connection with a business transaction initiated by the consumer" may access a report.

These sections refer to the needs and objectives of the person, i.e., GLENN JONES, who is to access or obtain the credit report, **not** the business needs of the person, i.e., Plaintiff, about whom the report is furnished.  *Fernandez v. Retail Credit Co.*, 349 F.Supp. 652, 654-655 (E.D.La. 1972).

If a person has a permissible purpose for obtaining a report it may do so without authorization.  *Baker v. Bronx-Westchester Investigations, Inc.*, 850 F.Supp. 260, 264 (S.D.N.Y. 1994).  Indeed, the Federal Trade Commission interprets § 1681 to allow persons to obtain a

---

[3] Complaint, ¶¶ 42, 43, 44 and 45.  GLENN JONES accessed Plaintiff's credit report on December 21, 2004.

5

report without permission or over the consumer's objections as long as the report is being obtained for a permissible purpose. 16 C.F.R. pr. 600, app.

In addition, notwithstanding references to § 1681q, Plaintiff has not pleaded a false pretenses claim. Specifically, Plaintiff does not even allege generally that GLENN JONES obtained her report under false pretenses, let alone specifically identify any false pretenses as is her burden.

Even if Plaintiff had stated a false pretenses claim, when a permissible purpose underlies a request for a consumer report, the report cannot have been accessed under false pretenses. *Baker, Id.*; *Scharpf v. AIG Marketing, Inc.*, 242 F.Supp.2d 455, 468 (W.D.Ky. 2003). Thus, a showing that a person accessed the report for a permissible purpose is also a complete defense to a false pretenses claim. *Advanced Conservation Systems Inc. v. Long Island Lighting Company*, 934 F.Supp. 53, 54 (E.D.N.Y. 1996).

Therefore, Plaintiff's sole claim is that GLENN JONES violated § 1681b(f) and this dispute centers only on whether GLENN JONES accessed Plaintiff's credit report for permissible purpose. The facts prove it did.

**Glenn Jones Had A Permissible Purpose
For Accessing Plaintiff's Credit Report.**

Plaintiff initiated a business transaction when she came to GLENN JONES seeking to purchase a car. She initially sought a car under the terms of the Capital One credit voucher. GLENN JONES assisted Plaintiff's efforts to purchase a car. It contacted Capital One to confirm the terms of the credit voucher and showed Plaintiff vehicles it had to sell.

Plaintiff did not find anything she wanted the day she met with GLENN JONES' sales representative. However, she still wanted a vehicle, she gave GLENN JONES her parameters, and GLENN JONES continued to look for a car that fit.

6

GLENN JONES later found a vehicle it thought Plaintiff might like and called her. She stated she did not want the vehicle but the conversation did not end there. Plaintiff inquired about the Cadillac DTS she had seen at GLENN JONES' dealership. GLENN JONES responded that it still had the DTS but that its price was more than the credit voucher's limit. Plaintiff then asked whether other financing options were available. GLENN JONES sales representative, Mike Mitchell, told Plaintiff other lenders might be willing to finance higher amounts. Mitchell also told Plaintiff that GLENN JONES would try to find an alternative lender and that Plaintiff would have to provide additional information to GLENN JONES so it could access her credit report and submit loan packages to other lenders. Plaintiff provided the needed information. She never told GLENN JONES she did not want it to access her credit report.[4] Thereafter, GLENN JONES, while attempting to assist Plaintiff in purchasing a car, accessed her report.

These facts prove that GLENN JONES had a permissible purpose for accessing Plaintiff's credit report. Plaintiff initiated a credit business transaction. GLENN JONES had a legitimate business need for the information in Plaintiff's credit report. GLENN JONES intended to use and did use the information in Plaintiff's credit report in connection with the credit transaction Plaintiff initiated.[5] The Court should dismiss Plaintiff's FCRA claim.

   2.   **The Arizona Consumer Fraud Claim.**

A plaintiff must show a false promise or misrepresentation made in connection with a sale of merchandise to succeed on a claim of statutory consumer fraud. *Correa v. Pecos Valley Dev. Corp.*, 126 Ariz. 601, 605, 617 P.2d 767, 771 (App. 1980); *Flagstaff Medical Center, Inc. v. Sullivan*, 773 F.Supp. 1325, 1361 (D.Ariz. 1991); *affirmed in part, reversed in part,* 962 F.2d 879, *as amended*.

---

[4] GLENN JONES' SOF, ¶ 20.
[5] Plaintiff agrees that it is permissible to access a credit report in connection with extending credit to buy a car. See, GLENN JONES' SOF, ¶ 33.

7

**GLENN JONES Did Not Make A False Promise Or Misrepresentation to Plaintiff.**

Plaintiff bases her Arizona Consumer Fraud Act claim on the allegations in ¶¶ 15 and 16 of her Complaint. She alleges that GLENN JONES' statement that it "would not pull her credit report and in fact did not need to because Capital One would provide financing" was false.[6] The facts prove this statement was true.

GLENN JONES made a qualified promise. <u>In the context of a car purchase using pre-approved credit up to $20,000 from Capital One</u>, GLENN JONES told Plaintiff it would not access her credit report because it did not need her report. Plaintiff acknowledges that she was told such.[7]

GLENN JONES never told Plaintiff that no one would ever access her credit report in connection with her credit purchase of a car. Indeed, Plaintiff admitted GLENN JONES told her that Capital One would access her report, which it did that same day. Nothing GLENN JONES said was false. All of GLENN JONES' statements comport with the realities of purchasing a car.

Most car purchasers, like Plaintiff, cannot pay cash for a car. Financing is the rule. Often, the dealership shops financing packages for the purchaser. Some prospective purchasers arrange their own financing. Other times, as in Plaintiff's case, a purchaser receives a pre-approved-but-subject-to-confirmation-credit voucher from a lender. In each of these credit instances, someone, a car dealership, bank, credit union or credit card company, always accesses the prospective purchaser's credit report.

When a purchaser uses a credit voucher, the dealership does not assist the purchaser in getting financing. It thus doesn't need to access the purchaser's report and does not do so. This

---

[6] However, in her deposition, Plaintiff testified the basis for this claim was that GLENN JONES tried to sell her a car she did not want. GLENN JONES' SOF, ¶ 35.

[7] GLENN JONES' SOF, ¶5.

8

is what initially happened here. Plaintiff intended to use her credit voucher. Thus, GLENN JONES did not need to access her credit report and did not access her credit report the day she visited its dealership. Only Capital One did.

GLENN JONES accessed Plaintiff's credit report only <u>after</u> it was determined her car criteria exceeded the Capital One voucher limits. Specifically, Plaintiff inquired about a vehicle priced above the voucher limit and gave GLENN JONES the information it needed in order to explore other financing options for Plaintiff. The statement, about which Plaintiff complains, is true on these uncontested facts. The Court should dismiss Plaintiff's Arizona Consumer Fraud claim for this reason.

**3.  The Common Law Fraud Claim.**

The elements of common law fraud are: a representation; its falsity; its materiality; the speaker's knowledge of its falsity or ignorance of its truth; the speaker's intent that it should be acted upon by and in manner reasonably contemplated; the hearer's ignorance of its falsity; the hearer's reliance on the truth; the hearer's right to rely; and the hearer's consequent and proximate injury. *Nielson v. Flashberg*, 101 Ariz. 335, 338-339, 419 P.2d 514, 517-518 (1966).

Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence. *In re McDonnell's Estate*, 65 Ariz. 248, 253, 179 P.2d 238, 241 (1947). Instead, a plaintiff must prove fraud by clear and convincing evidence. *Rice v. Tissaw*, 57 Ariz. 230, 237, 112 P.2d 866, 869 (1941); *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 77, 985 P.2d 556, 562 (App. 1999). Finally, a plaintiff does not prove an actionable claim of fraud unless she proves a concurrence of all nine elements. *Pace v. Sagebrush Sales Company*, 114 Ariz. 271, 275, 560 P.2d 789, 793 (1977).

**GLENN JONES Did Not Commit Common Law Fraud.**

The representation of which Plaintiff complains to support her common law fraud claim is the same allegedly false representation supporting her consumer fraud claim: the promise that GLENN JONES "would not pull her credit report, and in fact did not need to because Capital One would provide financing" through its voucher.[8] See Complaint, ¶ 15. This statement is true for the reasons stated above.

Since a plaintiff must prove all nine elements of a fraud claim, and since Plaintiff cannot prove a false representation, the analysis should end here.[9] The Court should dismiss her common law fraud claim.

## II

## DAMAGE ANALYSIS

Under the FCRA, a consumer can recover actual damages proximately caused by negligent noncompliance with a requirement of the FCRA. *See*, § 1681o(a)(1). For willful noncompliance with a FCRA requirement, a consumer may recover actual damages or damages not less than $100 nor more than $1,000, proximately caused by willful noncompliance. *See*, § 1681n(a)(1)(A).

The Arizona Consumer Fraud act requires Plaintiff to prove she suffered consequent and proximate damages because of the alleged false promise she attributes to GLENN JONES. *Correa, Id.*; *Flagstaff, Id*. *See also, In re Minnesota Breast Implant Litigation*, 36 F.Supp.2d 863, 875 (D.Minn. 1998) (To recover on claim asserted under the Arizona Consumer Protection Act, plaintiff must show that any damages suffered were a direct result of defendant's unlawful acts.).

---

[8] Again, at her deposition, Plaintiff could not state the basis for her common law fraud claim. GLENN JONES' SOF, ¶ 36.

[9] In addition, Plaintiff has not shown how she relied to her detriment upon anything GLENN JONES may have told her.

10

Finally, common law fraud also requires clear and convincing proof, by competent evidence, that claimed damages were caused by the defendant's actions. *Nielson v. Flashberg, Id.*

### Plaintiff Did Not Suffer Any Damages From Anything GLENN JONES Allegedly May Have Said Or Done.

Plaintiff's evidence concerning her alleged actual damages and causation is so lacking it does not rise to the level of doubtful, vague, speculative or inconclusive. No evidence supports her contention that GLENN JONES' allegedly false promise damaged her.

At her deposition, Plaintiff was questioned about her actual damages. In addition, Plaintiff has provided her initial disclosure and a supplemental disclosure. Further, GLENN JONES' attorney verbally and in writing asked Plaintiff to provide direct evidence of her alleged damages. Plaintiff's counsel stated she would but she has not done so. The only "actual" monetary damage she claims is the alleged loss of a $40,000 home equity loan she intended to use to start and develop an internet networking website.[10]

However, despite requests, Plaintiff has not provided any evidence supporting her alleged loss of this loan. She has not identified or disclosed: 1) the name of any lender who allegedly denied the home equity loan; 2) the name of the representative of the lender; or 3) the alleged reason the lender denied the loan.

Nor has Plaintiff provided any evidence proving that GLENN JONES caused her alleged loss. Indeed, Plaintiff admitted during her deposition that she has no evidence proving that GLENN JONES' allegedly false promise, or its accessing her credit report, caused her to lose this loan.[11] This admission defeats her claims. There is more.

Plaintiff knows the real reason she did not get the home equity loan and it has nothing to do with GLENN JONES. Plaintiff admitted during her deposition that someone told her the real

---

[10] GLENN JONES' SOF, ¶ 38.
[11] GLENN JONES' SOF, ¶ 40.

11

reason she didn't get the home equity loan was her low credit score.[12]  This, not surprisingly, is the same reason GLENN JONES could not find car financing for Plaintiff.

Plaintiff provided with her disclosures five letters from the lenders GLENN JONES contacted.  Three of the letters do not state reasons for the denial.  Two do.  TranSouth Financial denied credit because of "delinquent past or present credit obligations" and "excessive obligations."  Household denied credit because of "serious delinq (sic) / public record or collection filed", "level of delinquency on accounts", and "time since delinquency too recent or unknown."  Note what is missing.

Neither TranSouth nor Household denied credit because there were too many credit inquiries on Plaintiff's account, let alone because GLENN JONES accessed her credit report.  Both lenders denied credit because Plaintiff was an unacceptable risk.  Plaintiff admits that she did not get the home equity loan for the same reason.

The best—only—evidence Plaintiff musters regarding the cause for her losing the alleged home equity loan is her <u>speculative belief</u> that she didn't get the loan because of what GLENN JONES said or did.[13]  Speculative beliefs concerning the cause of alleged damages cannot support Plaintiff's claims.  *In re McDonnell Estate, Id*.  The Court should dismiss Plaintiff's claims because she lacks proof of any actual damages, let alone any caused by GLENN JONES.[14]

### III

### **REQUEST FOR ATTORNEYS' FEES.**

Pursuant to § 1681n(c) and § 1681o(b), a defendant in a lawsuit premised on alleged violations of the FCRA may recover reasonable attorneys' fees when an unsuccessful pleading is

---

[12] GLENN JONES' SOF, ¶ 39.
[13] GLENN JONES' SOF, ¶ 38.
[14] Rule 26(a)(1)(B), FRCP, requires Plaintiff to produce all documents and tangible things supporting her claim.  Rule 26(a)(C) requires Plaintiff to provide a computation of all categories of damages, including documents and other evidence bearing on the nature and extent of her injuries.  Plaintiff has failed to do so.

filed in bad faith or for purposes of harassment. *Battley v. City Financial Corporation*, 2002 WL 1379204 (M.D. La.).

That Plaintiff's FCRA claim and her other claims are without merit is evident. Plaintiff filed her Complaint in bad faith or to harass. Her true intent is evidenced by her trying to extort $2,500 from GLENN JONES back on January 26, 2005, by claiming that she was entitled to such under federal law.[15] GLENN JONES therefore asks the Court to award it the attorneys' fees it has incurred in defending this claim.

## **CONCLUSION**

This case is not about a violation of consumer laws or fraud. This is about an attempt by Plaintiff to abuse the FCRA and extort a cost of defense settlement. GLENN JONES is not willing to play Plaintiff's game.

GLENN JONES had a permissible purpose for accessing Plaintiff's credit report. GLENN JONES did not lie to Plaintiff. Plaintiff's financial condition is not related in any way to what GLENN JONES said or did. Plaintiff's financial condition is the result of her cumulative problems, decisions and actions over many years.

GLENN JONES asks the Court to enter judgment dismissing Plaintiff's Complaint with prejudice and awarding GLENN JONES its costs and attorneys' fees.

Respectfully submitted: August 23, 2005.

ALVAREZ & GILBERT

By:   Donald R. Alvarez
      William C. Knoche
      Attorneys for GLENN JONES

---

[15] GLENN JONES' SOF, ¶ 22.

COPY mailed this 23rd day
of August, , 2005, to:

Floyd W. Bybee
FLOYD W. BYBEE, PLLC
2173 E. Warner Road, Suite 101
Tempe, Arizona 85284
Attorney for Plaintiff


By:  Donald R. Alvarez